UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| MICHAEL K. BASHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | NO. 1:10-CV-259 |
| | ) | *Chief Judge Curtis L. Collier* |
| JIM HAMMOND; HAMILTON COUNTY, | ) | |
| TENNESSEE; DR. STOKES; WARDEN | ) | |
| JENNINGS; SILVERDALE CCA; DR. | ) | |
| WILSON; and HAMILTON COUNTY | ) | |
| JAIL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

*Pro se* prisoner and here plaintiff Michael K. Bashaw brings this civil rights complaint under

42 U.S.C. § 1983, alleging violations of his right not to be subjected to cruel and unusual punishments,

as secured to him by the Fourth and Eighth Amendments. Defendants are two correctional officials,

two correctional institutions, and two physicians at those facilities. The pleading contains claims

against Defendants for failing to maintain safe conditions at the Hamilton County jail and failing to

provide Plaintiff appropriate medical treatment at the jail, as well as at CCA-Silverdale,[1] where he now

is housed.

---

[1] "CCA" stands for Corrections Corporation of America, Inc., a private corrections management company. Online at http://www.cca.com/about (all Internet materials as visited Apr. 27, 2011, and available in Clerk of Court's case file). *See Richardson v. McKnight*, 521 U.S. 399, 404 (1997) (referring to CCA as "a large, multistate private prison management firm").

# I. <u>The Filing Fee</u>

Plaintiff has submitted an application to proceed *in forma pauperis* which shows that he has a zero balance on account at Silverdale.  Nevertheless, since Plaintiff is a prisoner and since prisoners are not relieved of the ultimate responsibility of paying the filing fee, he is **ASSESSED** the full civil filing fee of $350.00. 28 U.S.C. § 1914(a).

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides shall submit to the Clerk, United States District Court, Post Office Box 591, Chattanooga, Tennessee 37401-0591, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk's Office. 28 U.S.C. § 1915(b)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

The Clerk of Court is **DIRECTED** to send a copy of this memorandum and order to the custodian of inmate accounts at CCA-Silverdale to ensure compliance with these fee-assessment procedures.

The agency having custody of Plaintiff shall collect the filing fee as funds become available and shall continue to collect monthly payments from his inmate account until the entire filing fee of $350.00 is paid.  This order shall become a part of Plaintiff's prison file and follow him if he is transferred to another institution.  Plaintiff is also **ORDERED** to notify this Court of any change of address if he is transferred to another institution, and to provide the prison officials at any new institution with a copy of this order.  Plaintiff's failure to notify this Court of an address change and/or the new prison officials of this order and outstanding debt, will result in the imposition of appropriate sanctions against Plaintiff without any additional notice or hearing by the Court.

## II.  Plaintiff's Contentions

The complaint contains the following allegations against Defendants.  On some unstated date, Plaintiff slipped and fell on an icy spot on the kitchen floor at the Hamilton County jail.  This mishap occurred as the result of the combined deliberate indifference of the second- and first-shift staffs—the former staff, by leaving the freezer door open and failing to ensure that the kitchen was secured, and the latter, by closing the freezer door, but failing to erect warning signs or otherwise alert the inmate kitchen workers of the frozen and very slippery floor.

Thereafter, Plaintiff was fired from his kitchen job by Dr. Sikes, who told him he could not work in the kitchen with a bad back.  The jail staff downplayed Plaintiff's injury, telling him he would stay on the second floor until he recovered (from his fall?).  Dr. Stokes treated Plaintiff for sciatica, a common back and nerve disease, and, after three visits, Plaintiff urged this physician to obtain x-rays, but Dr. Stokes declined to do so.  Dr. Stokes also tried to downplay Plaintiff's injury.  This physician shipped him to Silverdale to get rid of the problem; failed to send his medical records to the receiving institution; and also told the nurses at Silverdale Plaintiff was not on medication.

After Plaintiff arrived at Silverdale and after much argument, he obtained an appointment with Dr. Wilson, who told him he had conferred with his colleague at Hamilton County jail and agreed with the colleague about Plaintiff's having  sciatica.  However, three visits later, when Plaintiff told Dr. Wilson there were two witnesses to his fall, the doctor's demeanor changed noticeably and he ordered X-rays and a CT (Computerized Axial Tomography Scan) and/or an /MRI (Magnetic Resonance Imagery Scan) for Plaintiff.  When Dr. Wilson got the results from these tests, which showed Plaintiff's L-5 was pushed in and tilted and his L-4 was twisted, this physician hung his head and apologized, telling plaintiff "we just misdiagnost (sic) it."  At first, Dr. Wilson stated he would try to ask the County to pay for an operation, but now reports to his patient the County cannot afford it.  Dr.

Wilson told Plaintiff that, if he were Plaintiff, he (Dr. Wilson) would sue the County.[2]  The staff members curse Plaintiff and delay delivery of his meals, due to their resentment at having to care for him, since never before has an inmate who needs care remained in general population.

All these events, according to Plaintiff, stem from deliberate indifference on the part of staff members at the Hamilton County jail and CCA-Silverdale—institutions which Defendants Jim Hammond and Warden Jennings are over.  Plaintiff asks that both facilities be required to pay for his operation; give him monetary compensation for his pain, suffering, and mental anguish; retrain him in another occupation if he cannot work as a concrete finisher anymore; and, to ensure what happened to him does not happen to anyone else, have safety meetings and put up warning signs about dangerous conditions.

### III.  Screening

Under 28 U.S.C. § 1915(e), a court is required to screen civil complaints brought by prisoners proceeding *in forma pauperis* and to dismiss an action at any time if the court determines that it is frivolous or fails to state a claim upon which relief can be granted.  In performing this task, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  After reviewing the pleading filed in this case, the Court finds sua sponte dismissal is the appropriate disposition of this action.

### A.  Liability

---

[2]  Plaintiff has used the feminine pronoun to refer to Dr. Wilson in making this particular allegation, but has employed the masculine pronoun in making all other allegations against this physician. Because the masculine pronoun predominates in Plaintiff's contentions against this Defendant and because the Court has chosen consistency and clarity over merely parroting the allegations contained in the complaint, Dr. Wilson will be referred to as "he" and "him" throughout this order.

### 1.	*Respondeat Superior*

Right off the bat, there are problems with five of the named defendants. Two defendants, Jim Hammond and Warden Jennings, have been named as parties to this action because they are "over" the correctional facilities being sued.  Compl. at ¶ 4, Statement of Claim.  By naming these two correctional officials based on the reason provided, Plaintiff is seeking to impose supervisory liability on them.  However, this theory is unworkable in this particular lawsuit because § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees.  *Monell v. Department of Social Serv.,* 436 U.S. 658 (1978);[3] *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir. 1995); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).  Also, a plaintiff must establish the personal involvement of each defendant in the supposed constitutional deprivation.  *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).  While a supervisor can be held liable if he plays an active role in the alleged misconduct, no liability attaches if he merely fails to act.  *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Absent some concrete showing that Defendants Hammond and Jennings authorized, approved, or knowingly acquiesced in the alleged wrongdoing of their employees or contract physicians, Plaintiff has failed to state a § 1983 claim against them.  *Walton v. City of Southfield,* 995 F.2d 1331, 1340 (6th Cir. 1993)*; Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

### 2.	*Official Capacity*

There is another problem with Defendant Hammond, who is identified in the complaint as the "Chief" of the Hamilton County jail. The complaint is not specific as to whether this defendant is being

---

[3]	Though "*Monell* involved a municipal corporation, [ ] every circuit to consider the issue has extended the holding to private corporations as well." *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir.1996).

sued in his official capacity, individual capacity, or both. A suit brought against a public official will not be construed as seeking damages against the defendant in his individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995). The designation of individual capacity need not be explicit—though, of course, that is preferable—so long as the pleadings and other filed documents provide sufficient notice to defendants that they are being sued as individuals. *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001).

Here, Plaintiff has made no express designation of the capacity in which he is suing Defendant Hammond. Nor has he alleged anything in the pleading or other filed documents to indicate he is suing this defendant in his individual capacity. Absent an indication—express or otherwise—that this defendant is being sued in his individual capacity, the Court must assume he is being sued only in his official capacity as an official of the government entity of Hamilton County. *Id.* at 772.

### 3.    *Governmental Entity*

A suit against a defendant in his official capacity is treated as being an action against the governmental entity he represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). A governmental entity, such as Hamilton County, is liable under 42 U.S.C. § 1983 for constitutional violations which result from acts representing a policy or custom of that entity. *Monell*, 436 U.S. at 690-91.

To establish liability on the part of either Defendant Hammond or Hamilton County, Plaintiff must: 1) identify the questioned policy or custom which allegedly caused the injury; 2) connect the policy to the entity; and 3) show that the specific injury was incurred because of the implementation of the policy, all of which he has failed to do. *Garner v. Memphis Police Department*, 8 F.3d 358, 363-64 (6th Cir. 1993). Accordingly, for this reason too, Plaintiff has not stated a claim against

Defendants Hammond or Hamilton County.

**B.        Non-suable Entities**

Plaintiff has also named both the Hamilton County Jail and CCA Silverdale as defendants. To state a viable § 1983 claim, Plaintiff must allege: 1) he was denied a right privilege or immunity secured by the constitution or laws of the United States, and 2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Unfortunately for Plaintiff, he fails to state a § 1983 claim against Hamilton County jail and CCA Silverdale because these defendants are not "persons" subject to suit within the terms of the statute. *See Monell,* 436 U.S. at 689-90 n. 53 (Only "bodies politic" are "persons" who can be sued under 42 U.S.C. § 1983.); *see also Jackson v. Hamilton County Jail*, 2008 WL 2514073, * 5 (E.D.Tenn. June 19, 2008) (A jail "is not a legal entity amenable to being sued under 42 U.S.C. § 1983 but is merely a name assigned to the building which houses inmates."); *Marbry v. Correctional Medical Services*, 238 F.3d 422, 2000 WL 1720959, *2 (6th Cir. Nov. 6, 2000) (citing to *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir.1991)); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, *1 (6th Cir. May 1, 1997).

**C.        Medical Claim**

As to the substance of the "slip and fall" claim, Plaintiff attempts to couch it in terms of an Eighth Amendment violation, but what he is really talking about is an unnamed staff member's negligence in leaving a slick spot on the floor, where it was reasonably foreseeable an inmate kitchen worker might slip on it, fall, and be injured. But on assertions like this, Plaintiff cannot recover because it is well recognized law that allegations of mere negligence will not entitle him to relief under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiff's "slip and fall" claim is clearly based upon someone's negligence and, thus, he fails to state a claim for a constitutional deprivation. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish,

is not on that basis alone to be characterized as wanton infliction of unnecessary pain.")

### 1. *Dr. Sikes–Notification of Injury to Jail Authorities*

Next to be addressed is Plaintiff's allegation Dr. Sikes fired him from his job due to Plaintiff's back injury. This claim is somewhat puzzling since the Court is unaware of any correctional facility which cedes to a physician the authority to fire an inmate from his job. It is aware, however, of a policy which requires medical care providers in the state correctional system to notify the job placement officer if an inmate becomes physically or mentally unable to perform the duties of his job. *See* Tennessee Department of Correction Administrative Policies and Procedures 7 (May 1, 2010), online at http://www.state.tn.us/correction/pdf/505-07.pdf113 (all Internet materials as visited Apr. 26, 2011, and available in Clerk of Court's case file).

Therefore, the Court broadly construes Plaintiff's claim to be this: Dr. Sikes apprised the appropriate staff member of Plaintiff's injury, which resulted in him being discharged from his job. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (A *pro se* pleading "is to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers.") (citing *Estelle,* 429 U.S. at 106). This charitable reading of the allegations does Plaintiff no good because he does not identify any authority which permits an inmate to retain a job for which he is medically unsuited and, certainly, the Court knows of none. At any rate, even if Plaintiff's assertions are not liberally construed, but instead read literally, and if he truly intends to lodge a claim against Dr. Sikes for dismissing him from his job in the kitchen, Plaintiff has no right created by the Constitution to prison employment. *See Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981); *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) ("[W]e find that the district court properly dismissed as frivolous Plaintiff's claim that he was fired from his prison job."). Thus, any contention of this nature does not state a viable section 1983 claim and cannot proceed any further in this lawsuit.

## 2. *Negligence/Adequacy of Medical Care*

Plaintiff's core claims involve allegations of improper or inadequate medical treatment he received for his back problems. The Supreme Court has held that "punishment" can be extended beyond that which is part of a sentence and can include the conditions under which an inmate is confined; thus, a prison authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). An Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a plaintiff to show a "sufficiently serious" deprivation. *Id.* The subjective component requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Id.* at 842.

Prison doctors and officials are deliberately indifferent to a prisoner's serious medical needs respectively, "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Also, "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *See Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Boretti v. Wiscomb,* 930 F.2d 1150, 1154-55 (6th Cir.1991)); *see also Estelle*, 429 U.S. at 103 ("[T]he denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.").

However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106. Nor does a difference of opinion between medical care providers as to appropriate treatment for an inmate's ailment present a

constitutional controversy. *See id.* at 105-06; *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (disagreement between prison physician and physician who originally prescribed medications not of constitutional magnitude).

Plaintiff's claim that his back problem/injury was diagnosed as sciatica when it, in fact, it was a lumbar spine injury amounts to no more than an assertion of medical negligence. *Estelle* teaches, however, this type of an allegation fails to state a claim which entitles a prisoner to relief under § 1983. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *see also Comstack v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (A claim of deliberate indifference requires more than negligence or a misdiagnosis of a medical condition). The same holds true for allegations concerning one or both Defendant doctors' delay in ordering X-rays or other medical testing; failure to send Plaintiff's medical records to the receiving institution when he was moved from the jail; and informing the nurses at Silverdale Plaintiff was not on medication. (Plaintiff does not allege he was on medication though, by negative inference, the Court can fairly assume he so alleged.).

Plaintiff's last claim (i.e., Dr. Wilson indicated he would try to have the County provide funds for an operation, but later announced he had been unsuccessful in this endeavor) does not rise to the level of a constitutional violation because it does not satisfy either component of *Estelle*'s standard. First of all and aside from the fact that none of the relevant dates is supplied----either for the occurrence of the injury or the rendering of medical treatment,[4] Plaintiff does not indicate Dr. Wilson

---

[4] These are important facts to be pleaded since there is a one-year statute of limitations which applies to a prisoner's claim of unconstitutional medical mistreatment when alleged in a suit brought in a state or federal court under 28 U.S.C. § 1983.

recommended an operation, much less ordered one. "[T]he question whether . . . additional forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Nor is there anything offered in the pleading to suggest deliberate indifference on the part of Dr. Wilson. This Silverdale physician responded to Plaintiff's requests for medical attention by consulting with Dr. Stokes about his former patient's condition, agreeing that Plaintiff's back problem was sciatica; saw Plaintiff three times (though, presumably, still treating him for sciatica); on the fourth visit, ordered X-rays and CT and MRI scans of Plaintiff's back; and apparently on the fifth one, relayed the results of the testing to Plaintiff. There is not a sign that Dr. Wilson's response to Plaintiff's medical needs was "an unnecessary and wanton infliction of pain," which was "repugnant to the conscience of mankind, or offensive to "evolving standards of decency." *Id.* at 105-06. Thus, in this instance, Plaintiff has failed to state a cognizable Eighth Amendment claim.

Because Plaintiff's complaint has not survived the screening process, a separate order of dismissal will enter.


**ENTER**:


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**